## D. C. LEE v. JAMES BERMINGHAM.

1. LOST DEED; *Secondary Evidence of Contents.* Where an instrument, shown to have been deposited in a public office, is claimed to have been lost or destroyed, the testimony of the custodian of such office, or some person who has himself searched in such office, must be produced, showing that after search he was unable to find the instrument, before secondary evidence of its contents is admissible.

2. TITLE, *Protected Against Unrecorded Deeds.* One who, being no party to the judgment, purchases at sheriff's sale real estate, which by the record apparently belongs to the defendant, is protected against unrecorded deeds and mortgages and outstanding equities as fully as one who takes a voluntary conveyance from such defendant.

3. DEED, *Filed, but not Recorded.* A purchaser of real estate who takes his deed to the office of the register of deeds and deposits it with him for record, discharges thereby his duty of notice to the public; and if through the fault alone of the register the deed is lost and not entered of record, such failure will not work to the prejudice of the title of such purchaser, even in favor of a subsequent purchaser without notice, unless the first purchaser, after knowledge of the defect in the record, is guilty of *laches* in failing to give notice of his title, either by occupation of the premises, record of a new deed, or proceedings in court.

*Error from Wyandotte District Court.*

EJECTMENT, brought by *Lee* against *Bermingham.* Judgment for defendant at the April Term, 1882. Plaintiff brings the case here. The opinion states the facts.

*D. B. Hadley*, for plaintiff in error.

*John B. Scroggs*, and *Hale & Miller*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action of ejectment, brought by plaintiff in error, plaintiff below, in the district court of Wyandotte county, to recover possession of four lots in the city of Wyandotte. Plaintiff claims title in this way: In September, 1860, the Wyandotte town company, the then owner of the lots, conveyed them to Isaiah Walker, and this deed was duly recorded June 13, 1863. In June, 1869, a judgment was rendered against Isaiah Walker, which was kept alive by executions issued from time to time. On July 6, 1880, the lots were sold under an execution on such judgment. One lot was sold to B. B. Hadley, and the other three to plaintiff. Hadley subsequently conveyed by quitclaim the lot he bought to plaintiff. At the time of this sheriff's sale in 1880, the lots were vacant and unoccupied.

On the other hand, defendant claims title in this way: In 1857, Isaiah Walker owned one share in the town company of Wyandotte, calling for ten lots. Before the drawing of the lots, he assigned, in writing on the back of the share certificate, all his right, title and interest in the fourth, fifth and sixth-class drawings in said share to William B. Overton. Thereafter, these lots were drawn in the classes so assigned to Overton, but by mistake the town company conveyed to Walker. On the discovery of the mistake, Walker and his wife executed a quitclaim deed to Overton. This deed was never recorded, and is probably lost. In January, 1880, Overton conveyed to defendant.

The first question is, whether sufficient foundation was laid for secondary evidence of the contents of the deed from Walker to Overton. In reference to this the only testimony was that of Overton, as follows:

"Isaiah Walker made a quitclaim deed to me of these lots, numbered 1, 2, 3, 4, in block 168, which deed was also exe-

cuted by his wife, also subsequent to the deed to him from the Wyandotte city company. I took that deed with others to the register's office, but it was lost before it was put on record, and I could never find it. Have not searched in the register's office for it. I inquired of the register of deeds for it, and he could not find it."

The register of deeds was not called as a witness, nor any person who had made search in that office. No sufficient foundation was laid. The deed was traced to the register's office, and no one was placed on the stand who had made any search in that office. The statement of the witness that he had inquired of the register of deeds, and he could not find it, is simply hearsay testimony as to what the register told him. (*The State v. Cook,* ante, p. 82.) Counsel for defendant in error make a very different statement of the testimony in their brief, but we are governed by the record, and must follow that. Obviously that showing was not sufficient. In 1 Greenleaf on Evidence, § 558, the rule is thus stated: "And so if it might or ought to have been deposited in a public office, or other particular place, that place must be searched. If the search was made by a third person, he must be called to testify respecting it." (*Guthrie v. Merrill,* 4 Kas. 188; *Johnson v. Matthews,* 5 id. 123; *Douglas v. Wolf,* 6 id. 91.)

But it is argued by counsel, that although there might be error in this ruling, it is immaterial, because by the assignment on the certificate which was in evidence, the full title was transferred to Overton, and hence the lien of the judgment never attached to these lots. This seemed to be the opinion of the trial court, for it gave this instruction:

"That if the jury believe from the evidence that at the time of the rendition of the judgment against Isaiah Walker, said Walker had no actual interest in the property in controversy in this suit, and had no actual interest in said property at the time of the levy of the execution issued upon said judgment, that the purchaser at the sale made under such execution took nothing by his deed, and this notwithstanding the fact that by the record the title to said property was apparently in said Walker, and you will find for the defendant."

This instruction is evidently founded upon the decision of this court in *Holden v. Garrett*, 23 Kas. 98, to the effect that the lien of a judgment or an execution levy is only upon the actual interest of the judgment debtor in real estate, and does not, except in cases where the doctrine of estoppel applies, extend to interests which, by the record, are apparently, but not in fact, vested in him. The argument of course was, that as the property in fact belonged to Overton and not to Walker, the judgment against Walker cast no lien upon it, and the purchaser buying at the sheriff's sale took nothing. But the question in this case arises, not between the judgment creditor and the holder of an unrecorded title, but between a purchaser at the sheriff's sale and the holder of such title. Here is where the doctrine of estoppel applies. Neither purchaser was plaintiff in that judgment. They bought and paid money, and bought on the strength of the record title. The purchaser at a sheriff's sale is a purchaser in the same sense as he who makes a voluntary purchase and takes an ordinary conveyance from the party in whom, by the record, the legal title is apparently vested. (*Swarts v. Stees*, 2 Kas. 241; Freeman on Judgments, § 366; Freeman on Executions, § 336, and cases in notes.) When he purchases, if acting in good faith, he relies on the record. In *Lewis v. Kirk*, 28 Kas. 505, we said, referring to the registry and other statutes, that " under these statutes, we think it is perfectly safe for any person who has no notice of outstanding equities to purchase real estate which the records of the county apparently show is free and clear from all incumbrances." The same rule obtains in reference to outstanding titles. If the record shows the title clear in a party, and the purchaser has no notice of any outstanding equities or titles, he may as a rule safely purchase from such party, and the holder of the unrecorded title is estopped to set up his title as against one who purchasing has parted with value on the strength of the record. And this is true, whether the purchaser obtains title from the apparent owner by voluntary conveyance, or purchase at a sheriff's sale. Therefore if there

was no conveyance from Walker to Overton, and nothing but the assignment of the share certificate—which it is not pretended was ever recorded or deposited for record—the court erred in this instruction, and erred to the material injury of the plaintiff in error.

It may be, however, if all the facts are presented by competent testimony, that the verdict and judgment should still be in favor of the defendant. If in fact a deed was made from Walker to Overton conveying these lots, as was attempted to be shown in the trial, and such deed was in fact deposited for record in the office of the register of deeds, then the neglect of the register is a matter which the plaintiff cannot take advantage of. (*Poplin v. Mundell,* 27 Kas. 158.) In that case we said:

"It seems to us that when the party holding the title presents his deed, duly acknowledged and certified, to the register of deeds for record, and demands that it be placed upon record, and the register thereupon accepts the same, and duly indorses it filed of the date it is so presented, such party has discharged his whole duty to the public, and his muniment of title cannot be shaken by any subsequent purchaser. If any subsequent purchaser be injured by the neglect or delay of the register as to his duties in the registration of such conveyance, such injured party has his action against that officer."

In order, however, to bring this case within the limits of that rule, it must be satisfactorily shown that a deed was in fact executed conveying the lots in question; that it was taken to the register's office and deposited with him for record, and that the omission to record and the loss of the instrument were solely the fault of the register; and also that the defendant, after being aware of the defect in the record, was not guilty of *laches* in failing to give notice of his title, either by occupation of the lots, the record of a new deed, or proceedings in court. Every claimant of title owes a duty of notice to the public. Generally speaking, the record is the means of information; and the spirit of our laws is to encourage reliance upon the record. Where that fails and

the claimant knows of the failure, he owes to the public the duty of in some way making good the omission, and if he is derelict in this duty, he may be estopped from afterward setting up his title against one who has purchased and parted with value on the strength of the record.

This covers all the questions presented, or that we think are likely to arise in the further course of this litigation.

The judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.