## George Merrill v. William E. Hutchinson.

QUITCLAIM DEED — *No Notice of Prior Unrecorded Deed.* A quitclaim deed, duly recorded, taken by the purchaser in good faith and for a valuable consideration, will prevail over a prior unrecorded deed, where the subsequent purchaser had no notice of the former deed, and could not have discovered its existence by an investigation of the public records, or by the exercise of reasonable diligence in making proper examinations and inquiries.

*Error from Reno District Court.*

EJECTMENT. Judgment for defendant *Hutchinson*, at the March term, 1888. The plaintiff *Merrill* brings the case to this court.

*Hetlinger Bros.*, and *Vandeveer & Martin*, for plaintiff in error.

*Whiteside & Gleason*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: George Merrill brought this action in the district court of Reno county to recover two lots situate in the

city of Hutchinson. Henry King was the fee-simple owner of the lots for several years prior to May 10, 1877, at which time he executed a conveyance of the same to the plaintiff, but the deed was not recorded until more than ten years had elapsed. Merrill now claims title and right of recovery under this conveyance. Hutchinson, the defendant, claims title through certain tax proceedings and a conveyance made to him by Henry King and wife on July 16, 1885. It appears that King paid the taxes on the lots until 1877, and not being paid for that year, the lots were sold for taxes, and were bid in by the county. No taxes thereon were afterward paid by any one until January, 1883, when the tax certificate was assigned to L. A. Bigger, and a tax deed was executed to him on January 16, 1884, which was recorded on the same day. Bigger paid taxes thereon up to 1885, and about that time he sold the property to Isaac A. Kitzmiller, but the deed was not executed until March 17, 1886, and it was recorded on March 24, 1886. On April 12, 1886, Kitzmiller and wife conveyed the lots to William E. Hutchinson, and on July 16, 1885, Henry King and wife executed a quitclaim deed, purporting to convey the property to Hutchinson, which instrument was recorded on July 17, 1885.

The plaintiff contends that the tax proceedings were irregular in two respects, and this is not denied by the defendant; and hence we may assume that the tax proceedings alone will not sustain the defendant's claim of title. It is said by the defendant that the court below held against the validity of the tax proceedings; but it also held that the quitclaim deed of Hutchinson was obtained from King after making diligent inquiry to ascertain the condition of the title, and without notice of the unrecorded deed of plaintiff, and therefore adjudged the quitclaim deed to be superior to the prior unrecorded deed of plaintiff. This is the only question in the case.

It appears that when King conveyed the lots to Hutchinson, he had forgotten the previous conveyance to Merrill, and he supposed that he still held the original title to the lots and

the complete title except as it was affected by the tax title which had been taken, and which had then passed to Hutchinson. Before purchasing the lots from King, Hutchinson searched the records, and in good faith made diligent inquiry and examination as to the condition of the title, and found nothing indicating the prior conveyance, or that Merrill had or claimed any interest in the property. Kitzmiller had taken possession of the lots and made permanent improvements thereon before the purchase of the same by Hutchinson. None of the parties connected with the tax proceedings, or who paid the taxes, or who took possession and made improvements on the property, knew anything of the prior deed, and Merrill did not disclose the fact until long after the tax deed and subsequent conveyance had been placed on record, nor for a long time after the permanent improvements had been made.

The plaintiff urges that the defendant cannot be regarded as a *bona fide* purchaser, and cites *Johnson v. Williams*, 37 Kas. 179. It was there held that where the grantor gives only a quitclaim deed, the purchaser is put upon inquiry; but it was not decided that the mere taking of such a deed deprived him from being considered a *bona fide* purchaser under all circumstances. It was said that "A person who holds real estate by virtue of a quitclaim deed only from his immediate grantor, whether he is purchaser or not, is not a *bona fide* purchaser with respect to outstanding and adverse equities and interests shown by the records, or which are discoverable by the exercise of reasonable diligence in making proper examinations and inquiries." In deciding the case, however, it was remarked, that —

"It may be that with reference to some equities or interests in real estate, the purchaser who holds only under a quitclaim deed may be deemed to be a *bona fide* purchaser; for equities and interests in real estate may sometimes be latent, hidden, secret and concealed, and not only unknown to the purchaser, but undiscoverable by the exercise of any ordinary or reasonable degree of diligence. It is possible also that a purchaser taking a quitclaim deed may under the registry laws be con-

sidered a *bona fide* purchaser with reference to a prior un-recorded deed with respect to which he has no notice nor any reasonable means of obtaining notice."

The facts of the present case bring it within the suggestion made in the cited case, and we think the rule suggested should be adopted for the determination of this controversy. (See authorities cited in *Johnson v. Williams*, supra.) The form of the deed alone did not conclude Hutchinson, nor prevent him from becoming a purchaser in good faith; it simply operated as a warning to him, and put him upon inquiry. It was his duty then to look further, and ascertain why the deed was made without covenants of warranty; and he took it loaded with such outstanding equities or interests as he might have discovered by the exercise of reasonable diligence. As we have seen, he examined the records, inquired of those in pos-session, and who paid the taxes thereon, and of every one who had any apparent interest in the property, and could not learn from any of them that Merrill had any claim upon the prop-erty. And King, the owner of the record title, to whom Hutchinson applied for a deed, had forgotten the conveyance to Merrill, so that it could not be learned from that source. The reason why King gave and Hutchinson took a deed with-out covenants of warranty was the outstanding tax title, under which parties had taken possession and made improvements; and these circumstances justify the making of a quitclaim deed, and would naturally set at rest any doubts which might arise in the mind of Hutchinson on account of the form of the deed. He paid a fair consideration for the lots, and al-though his conduct has been criticised we find nothing in it to impeach his good faith. It may be remarked that the deed from King purported to convey the property, and did not in terms limit the conveyance to the mere interests of the grant-ors, nor did it contain any express restriction upon an ab-solute conveyance. King evidently intended to convey a complete title to the property, except that which had been acquired through tax proceedings, and Hutchinson supposed and had a right to suppose that having acquired the rights

of the tax-title purchaser, and a conveyance from King, he was vested with a complete and perfect title. The interest of Merrill was so concealed as to be undiscoverable by any reasonable search, and his conduct in the premises does not appeal strongly to the equitable consideration of the court. He purchased the property when it was of little value, and withheld the deed from record for about ten years. During this time he paid no taxes and made no improvements thereon, and did nothing to disclose his ownership. With an unrecorded deed in his pocket, he stood by while others who had obtained deeds placed them on record, erected buildings and other improvements on the lots and paid accumulated taxes thereon, never intimating that he held an interest in the property. After the value of the property had been greatly enhanced by the improvements made, and by the growth and general prosperity of the city, he uncovers a deed and asserts title. The act relating to conveyances provides for the recording of all instruments conveying real estate or whereby any real estate may be affected, and that from the time of filing the same with the register of deeds they shall impart notice to all persons of the contents of the instruments, and that all subsequent purchasers and mortgagees shall be deemed to purchase with notice. It then provides that "no such instrument in writing shall be valid except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record." (Gen. Stat. of 1889, ¶¶ 1128, 1129, 1130.) The duty of placing the deed on record was enjoined by the statute and required by public policy; but the plaintiff ignored both, and it is now too late for him to assert his title against one who purchased in good faith and without notice of the outstanding interest. Even a purchaser at sheriff's sale, other than a judgment creditor, who has parted with value on the strength of the record, and that there are no outstanding equities or titles which are discoverable by ordinary diligence, is entitled to the protection of the recording act. As to him, it has been said:

"If the record shows the title clear in a party, and the pur-

chaser has no notice of any outstanding equities or titles, he may as a rule safely purchase from such party, and the holder of the unrecorded title is estopped to set up his title as against one who purchasing has parted with value on the strength of the record. And this is true, whether the purchaser obtains title from the apparent owner by voluntary conveyance, or purchase at a sheriff's sale." (*Lee v. Birmingham,* 30 Kas. 312.)

In the same case it is remarked that —

"Every claimant of title owes a duty of notice to the public. Generally speaking, the record is the means of information; and the spirit of our laws is to encourage reliance upon the record. Where that fails and the claimant knows of the failure, he owes to the public the duty of in some way making good the omission, and if he is derelict in this duty, he may be estopped from afterward setting up his title against one who has purchased and parted with value on the strength of the record."

In *Lewis v. Kirk,* 28 Kas. 505, it is said that—

"A purchaser in good faith of real estate is never bound to take notice of secret equities, liens, interests, trusts, or incumbrances, which cannot be discovered from an inspection of the public records, or cannot be ascertained by inquiries from the parties in possession. He may always rely upon the public records, and such inquiries as they suggest, and such inquiries as are proper of the parties in possession; and if, from all these, the title appears to be clear, he will then obtain a good title, although there may be some outstanding equity or lien in favor of some other person."

The defendant acted in good faith and was not derelict in examining the record or in making inquiries of those in possession or of those likely to know of outstanding equities or titles. The plaintiff, on the other hand, was at fault in failing to give the notice which the law and fair dealing with the public requires. In consequence of his fault, the property was purchased for a valuable consideration, taxes were paid and improvements made thereon, and he who is in fault should suffer the loss which his conduct has occasioned.

We think the title of the defendant under the quitclaim

deed is paramount to that of the plaintiff, and the ruling of the district court must be upheld.

The judgment will be affirmed.

All the Justices concurring.