## H. B. SMITH v. HARRIET C. RUDD.

QUITCLAIM DEED — *Interest Conveyed—Notice.* A party receiving a quitclaim deed for real estate is presumed to take it with notice of all outstanding interests and claims of which he could obtain knowledge, by the exercise of a reasonable degree of diligence, in the examination of all of the public records affecting the title to the property included in such deed, and from inquiries which he might make of persons whom the records show had redeemed the property from tax sale and had paid subsequent taxes thereon, or were otherwise ostensibly interested in such property.

### *Error from Miami District Court.*

EJECTMENT by *Smith* against *Rudd.* Judgment for defendant, April 15, 1889. The plaintiff comes to this court. The opinion states the facts.

*Sperry Baker,* for plaintiff in error.

*Carroll & Sheldon,* for defendant in error.

Opinion by GREEN, C.: This was an action in the nature of ejectment, brought by H. B. Smith, in the district court of Miami county, against Harriet C. Rudd, to recover lots 13 and 14, in block 91, in Ellensville, an addition to Osawatomie. The case was tried by the court, and the following findings of fact made:

"1. Upon and before the 1st day of August, 1870, L. Hendrickson was the owner of the property in controversy, lots 13 and 14, in block 91, in Ellensville, an addition to the town of Osawatomie, in Miami county, Kansas.

"2. Upon the 1st day of August, 1870, L. Hendrickson and wife conveyed said property to S. S. Outman, by warranty deed, for the sum of $30, which sum was a fair price for said property at that time.

"3. The deed from L. Hendrickson and wife to S. S. Outman was filed for record in the office of the register of deeds of Miami county, Kansas, and recorded on the 19th day of March, 1887. Said deed was acknowledged before H. B. Smith, a notary public of Miami county, Kansas, and who is

now the plaintiff herein. Said deed was delivered to S. S. Outman by L. Hendrickson on the day it bears date, and L. Hendrickson, the grantor, wrote the deed; and, after the deed had been delivered to S. S. Outman, he left it with L. Hendrickson to be by him filed for record, and soon after left the state, going to East St. Louis, Ill. [to live,] and the said deed remained in the care of the said L. Hendrickson until he delivered it to A. W. Rudd, at the request of said S. S. Outman, some time prior to the year 1879; and the said A. W. Rudd had charge of said deed from the time it was handed to him by said L. Hendrickson until the year 1879 as the agent of the said S. S. Outman; and the said A. W. Rudd, in the year 1879, handed the deed to S. S. Outman, the grantee, who retained it in his own personal possession from the year 1879 to the 19th day of March, 1887, without filing it for record.

"4. The said S. S. Outman now resides in Linn county, Kansas, where he has resided ever since the year 1879.

"5. The name of the said S. S. Outman was never entered upon the tax-rolls as the owner of said lots, or of either of them, prior to the year 1887. But for the year 1870, and each year thereafter until the year 1883, (excepting the years the property escaped taxation,) the name of L. Hendrickson appeared upon the tax-rolls and assessment rolls as the owner of the said lots. And on the tax-roll and assessment roll of the year 1883, (excepting the years 1874 and 1879 and 1881, which years the property escaped taxation,) the name of L. Hendrickson appeared upon the tax-rolls and assessment rolls as the owner of said lots. And the sale book in the office of the county treasurer shows that, upon the 7th day of May, 1872, said lots were sold to Miami county for the delinquent taxes, and were redeemed from said sale by S. S. Outman in September, 1879; and the cash-book in the office of the county treasurer shows that A. W. Rudd paid the taxes on said lots for the years 1875 and 1876 and 1877, and that S. S. Outman paid the taxes on said lots for the years 1878 and 1880.

"6. On the 27th day of November, 1883, L. Hendrickson and wife executed and delivered to Mary P. Smith, (who was then and still is the wife of the plaintiff herein,) a quitclaim deed for said lots, the consideration being $10, paid by said Mary P. Smith. At that time the said lots had been sold to the county for delinquent taxes, and the amount paid to L. Hendrickson for said quitclaim deed, together with the delinquent taxes then on the lots, was a fair price for them at that

time. The plaintiff, H. B. Smith, acted as the agent of his wife, Mary P. Smith, in negotiating the purchase of the property from L. Hendrickson. Neither H. B. Smith nor Mary P. Smith knew that L. Hendrickson had previously executed a deed to S. S. Outman for the property, at the time Mary P. Smith received the quitclaim deed from L. Hendrickson and wife and paid him the $10 for the lots; but they believed at the time that she was getting a good title to the property, subject to the taxes. Neither of them examined the treasurer's sale book, or knew that S. S. Outman had redeemed the property from the sale of May 7, 1872; but the said H. B. Smith, before the said Mary P. Smith received said quitclaim deed and paid said Hendrickson for said lots, did examine the records in the office of the register of deeds, from which it appeared that L. Hendrickson was the owner of the property, and he also examined the tax-rolls of the county.

"7. On the 3d day of April, 1884, said Mary P. Smith redeemed said lots from tax sale, and she paid the taxes on said lots for the years 1884 and 1885 and 1886.

"8. The said lots were vacant and unimproved until after the 19th day of March, 1887, the day the deed from Hendrickson and wife to S. S. Outman was recorded. On that day the said S. S. Outman first learned that L. Hendrickson and wife had made the quitclaim deed to Mary P. Smith, and the plaintiff then first learned that L. Hendrickson and wife had made the warranty deed to S. S. Outman.

"9. On the 18th day of July, 1885, said Mary P. Smith conveyed by warranty deed the lots in controversy, and other real estate, to the plaintiff; and the plaintiff, in consideration therefor, conveyed to said Mary P. Smith the homestead occupied by said H. B. Smith and Mary P. Smith. Said lots were conveyed to the plaintiff, H. B. Smith, the better to enable him to sell them.

"10. On the 21st day of March, 1887, said S. S. Outman took actual possession of said lots by fencing and planting trees.

"11. Upon the 21st day of July, 1887, S. S. Outman and wife sold and conveyed by warranty deed the lots in controversy to the defendant, Harriet C. Rudd, for the sum of $250, which was a fair price for the lots at that time; and at the time the defendant, Harriet C. Rudd, bought the lots of said S. S. Outman she knew of the deed from L. Hendrickson and wife to Mary P. Smith, and that the plaintiff claimed to own the lots.

"12. After purchasing the said lots and receiving the deed from S. S. Outman, and before the commencement of this suit, the defendant, Harriet C. Rudd, erected a dwelling-house and outbuildings on said lot 13, at an expense of $550, and erected a dwelling-house and outbuildings on said lot 14 at an expense of $350. And after the erection of this dwelling-house on lot 14, and before the commencement of this suit, the defendant, Harriet C. Rudd, contracted to sell said lot 14 to one Franklin Allard for the sum of $450, and received a payment of $30. And said Allard, in the autumn of the year 1887, removed the dwelling-house erected by defendant, Harriet C. Rudd, on lot 14 from the lot, and laid a foundation for a dwelling-house thereon. And since the commencement of this suit said Allard has erected another dwelling-house on said lot 14. The $30 is all that said Allard has paid on said contract for the purchase of said lot 14.

"13. The sale book in the office of the county treasurer of said county shows that lots 13 and 14 and 16, of block 91, in Ellensville, an addition to Osawatomie, were sold together for the taxes of 1871, and the taxes of 1872 charged up to such sale; and that lots 13 and 14 were redeemed from this sale by S. S. Outman, September 20, 1879. And the cash-book of the county treasurer's office shows that the taxes on said lots 13 and 14 were paid by A. W. Rudd for the years 1873 and 1875 and 1876 and 1877; and that the taxes on said lots 13 and 14 were paid by S. S. Outman for the years 1878 and 1880; and that the taxes on lots 13 and 14 were paid by Mary P. Smith for the years 1884 and 1885 and 1886; and that said sale book shows that said lots 13 and 14 were sold to the county for the taxes of 1882, and that the taxes of 1883 were charged against these lots on the sale books, and that Mary P. Smith redeemed these lots from this sale. And said cash-book shows that the taxes on said lots 13 and 14 were paid by defendant, Harriet C. Rudd. And the tax-roll in said office shows that the said lots 13 and 14 escaped taxation for the years 1874 and 1879 and 1881. And the court finds from the testimony that said A. W. Rudd, in paying said taxes, was acting as the agent of said S. S. Outman, although the cash-book does not show this agency."

Upon the above findings of fact, the district court entered judgment in favor of Harriet C. Rudd. It is urged by the plaintiff in error that, upon the state of facts found by the court, he should have had judgment; that the quitclaim deed

from L. Hendrickson and wife to Mary P. Smith, mentioned in the sixth finding, passed the title to the property. It is conceded that at the time Mary P. Smith bought the lots the property was encumbered for the amount of the delinquent taxes then due; these taxes and the sum of $10 constituted the purchase-price. This fact alone would make it necessary for her to examine the records to see what taxes had been assessed against the property which she proposed to purchase. It will hardly be presumed that she bought the lots without knowing the amount of the delinquent taxes. The exercise of reasonable diligence would have disclosed the fact that on the 20th day of September, 1879, S. S. Outman, the grantee in the first deed from L. Hendrickson and wife, redeemed the lots in controversy from the tax sale for the delinquent taxes of 1871 and the subsequent taxes of 1872. The tax-sale book of the county treasurer showed this fact, and this was more than four years before Mary P. Smith took a quitclaim deed for the same property. The court found, too, that A. W. Rudd, acting as the agent for S. S. Outman, paid the taxes upon the same lots for the years 1873, 1875, 1876, and 1877, and that Outman paid the taxes himself for the years 1878 and 1880. We think the fact that a party pays taxes upon property is evidence that he claims some interest in the same; but the fact that he is permitted by the county treasurer to redeem property sold for taxes is a stronger evidence of interest. Paragraph 6976 of the General Statutes of 1889 provides that any owner, his agent or attorney, may redeem land sold for taxes. Now, the fact that the record in the county treasurer's office showed that Outman had redeemed the property from tax sale and had paid subsequent taxes was sufficient notice to the grantee in the quitclaim deed that he claimed some interest in the property — notice sufficient, we think, to put a person upon inquiry. It was said in the case of *Johnson v. Williams*, 37 Kas. 182:

"We would think that in all cases, however, where a purchaser takes a quitclaim deed, he must be presumed to take it with notice of all outstanding equities and interests of which

he could, by the exercise of any reasonable diligence, obtain notice from an examination of all records affecting the title to the property, and from all inquiries which he might make of persons in the possession of the property, or of persons paying taxes thereon, or of any person who might, from any record, or from any knowledge which the purchaser might have, seemingly have some interest in the property.    In nearly all cases between individuals, where land is sold or conveyed, and where there is no doubt about the title, a general warranty deed is given; and it is only in cases where there is a doubt concerning the title that only a quitclaim deed is given or received; hence, where a party takes a quitclaim deed, he knows he is taking a doubtful title, and is put upon inquiry as to the title."

The same principle was adhered to in the case of *Merrill v. Hutchinson*, 45 Kas. 59.    It is insisted that this case differs in principle from the case of *Johnson v. Williams*, supra, for the reason that the conveyance from Mary P. Smith to the plaintiff was not a quitclaim but a warranty deed.    We fail to see the distinction.    The plaintiff acted as the agent of his wife, Mary P. Smith, in buying the property from L. Hendrickson.    She was bound by his knowledge concerning the transaction, and he accepted a deed to the lots from his wife, as the court found, "the better to enable him to sell them."

We do not think the district court erred in its conclusion of law, and therefore recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.