HENRY E. EGER *et ux.* v. J. U. BROWN *et ux.*

No. 15,445. (94 Pac. 803.)

SYLLABUS BY THE COURT.

1. QUITCLAIM DEED—*Purchaser in Good Faith.* In order that a purchaser taking title by quitclaim deed may be a purchaser in good faith it is not necessary that he should catechise the vendor respecting the latter's estate in the land when the vendor on the face of the record appears to have an interest or estate to convey.

2. ———— *Prior Unrecorded Deed Held Inferior to a Quitclaim Deed.* The rule that if a purchaser by quitclaim deed act in good faith, pay a valuable consideration, and have no actual notice of outstanding equities or unrecorded instruments, he will take title subject only to those rights which are discoverable through an investigation of the various public records and by the exercise of reasonable diligence in making proper examinations and inquiries applied, and the rights of a quitclaim deed holder held to be superior to those of a grantee under prior unrecorded conveyances.

Error from Greeley district court; CHARLES E. LOBDELL, judge. Opinion filed March 7, 1908. Affirmed.

*D. R. Beckstrom,* for plaintiffs in error.

*W. M. Glenn, Lee Monroe,* and *George A. Kline,* for defendants in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiffs brought suit to remove a cloud from, and to quiet, their title to a tract of land. The defendants answered claiming full title, which they prayed might be established by decree of the court. Judgment was rendered for the plaintiffs, and the defendants prosecute error, claiming the judgment is contrary to law.

The controlling facts are not disputed. J. U. Brown, desiring to purchase the land in controversy, caused the records to be examined, and the result of the search was laid before him in the form of an abstract of title. The abstract disclosed title in Harry D. Endress, by warranty deed to him, recorded January 5, 1895, unless such title were cut off by a tax deed dated September 25, 1902, issued to G. O. and B. V. Pearson and recorded November 14, 1902. Endress resided in Montgomery county, Ohio, where he had lived for many years. Brown wrote to Endress advising him that a tax deed of the land had been executed and asking him what he would take for it. Endress replied referring to the land as "my land" and stated a price. Brown made a counter-offer, which was accepted, and on December 7, 1903, received a quitclaim deed of the land, which was duly recorded on December 13, 1903. The deed was taken for convenience in the name of E. H. Brown, wife of J. U. Brown. It recited a consideration of $50, which Brown paid and which he believed to be a substantial price for the land.

On February 6, 1904, Brown obtained from the Pearsons a quitclaim deed of the land, which he recorded on February 10, 1904. Brown acted in good faith in both transactions; he had no knowledge of any outstanding title and no knowledge of any claim upon the land by third persons. There is no claim that the records supplied any information which the abstract did not disclose, or that any one was in possession or control

of the land to whom inquiries might have been ad-
dressed or from whom information might have been
obtained relating to outstanding titles.

In December, 1895, Endress executed a warranty
deed of the land, blank as to the grantee, and left it
with one W. James to be disposed of.   This deed came
to record September 24, 1904, with the name W. S. Rob-
inson appearing as grantee.   When this deed was exe-
cuted Endress did not know to whom it would go, and
when his quitclaim deed to Brown was executed he did
not know what had become of it.   On May 7, 1903, the
Pearsons executed a quitclaim deed to Robinson, which
was recorded on September 24, 1904.   After Brown's
deeds were recorded the defendants acquired the Rob-
inson title by warranty deed.

The question is, Was Brown an innocent purchaser?
The leading cases decided by this court involving the
question of the innocent character of a purchaser by
quitclaim deed are *Johnson v. Williams*, 37 Kan. 179,
14 Pac. 537, 1 Am. St. Rep. 243; *Goddard v. Donaha*,
42 Kan. 754, 22 Pac. 708; *Merrill v. Hutchinson*, 45
Kan. 59, 25 Pac. 215, 23 Am. St. Rep. 713; *Smith v.
Rudd*, 48 Kan. 296, 29 Pac. 310; and *Fountain v. Ken-
ney*, 71 Kan. 642, 81 Pac. 179.   A purchaser of real
estate who accepts a quitclaim deed does not take title
subject to all outstanding titles, equities and claims.
(*Fountain v. Kenney, supra.*)   The statement to the con-
trary by Commissioner Clogston in the case of *Harris
v. Pratt*, 37 Kan. 316, 320, 15 Pac. 216, is incorrect.
As the opinion in *Johnson v. Williams, supra*, antici-
pated, a purchaser holding by quitclaim deed only may
be a purchaser in good faith as against latent, hidden
or secret equities undiscoverable by the exercise of
ordinary and reasonable diligence, and·under the reg-
istry laws such a purchaser may hold title in good faith
as against prior unrecorded deeds concerning which he
had no notice and no reasonable means of obtaining
notice.   If such a purchaser act in good faith, pay a

valuable consideration, and have no actual notice, he will take title subject only to those rights which are discoverable through an investigation of the various public records and by the exercise of reasonable diligence in making proper examinations and inquiries. (*Merrill v. Hutchinson*, 45 Kan. 59, 25 Pac. 215, 23 Am. St. Rep. 713.) Of course, notice must be taken of the claims of persons ostensibly interested. (*Smith v. Rudd*, 48 Kan. 296, 29 Pac. 310.)

With no one apparently claiming the land adversely to Endress or the Pearsons, with no indication furnished by the land itself that any other person claimed it, and with nothing upon the records leading to the supposition that others might be interested in it, what information concerning the Robinson title was obtainable by Brown and what did reasonable diligence on his part require? It is plain that Brown had no way of learning of the unrecorded deeds except through his grantors. If Endress had been asked to expose his own lack of title he could not have uncovered Robinson, because he did not know what had become of the blank deed. He might have suggested the name of James and James might have been hunted up. But Endress lived in a remote state, in the preliminary negotiations he referred to the land as his own, his evident purpose was to convey full title except as it might be affected by the tax deed, and it was not reasonable to expect him to assume the burden of the covenants usual to conveyances of real estate when a tax deed was outstanding which might prove to be sufficient to cut off all his rights. If the Pearsons had been interrogated they might have said they had nothing to sell because they had already deeded to Robinson, but it was not reasonable to expect that they would warrant a tax title. Therefore Brown had abundant reason not to inquire of either Endress or the Pearsons why they were unwilling to give deeds in the ordinary form. While the quitclaim deeds suggested

33—77 KAN.

that the grantors doubted their respective titles, the patent facts furnished a ready explanation for such doubts which any prudent business man might safely accept, and it is impossible to say Brown was lacking in diligence because he did not catechise his grantors respecting their estates in the land.

In addition to the foregoing, it must be noted that a purchaser taking title by quitclaim deed may be a purchaser in good faith without cross-examining his grantor in order to obtain a disclosure of defects in the title when the grantor on the face of the record appears to have an interest to convey. The tender of a quitclaim deed in such a case merely opens the eyes of the purchaser and directs his attention outward and elsewhere for facts and for clues in derogation of the apparent title.

Assuming for the sake of illustration, but not implying, that the Pearsons acted purposely and not forgetfully, their conduct would offend the sense of right. They would be in the attitude of taking Brown's money without intending to give anything in return, or else they would be in the attitude of deliberately empowering Brown to take away from Robinson that for which Robinson had paid them. But since Robinson had left them with an apparent title of record to convey, Brown, acting otherwise in good faith, could take it for granted they were dealing fairly and in respect to the title disclosed by the record. There being no suggestion that Brown might have extended his inquiries in other directions, he was a *bona fide* purchaser although his deeds are quitclaims, and they must prevail over the unrecorded instruments of his adversaries.

All the parties having taken advantage of the opportunity to try out their titles the form of the action is no longer of consequence, and the question raised respecting proof of possession is not now material.

The judgment of the district court is affirmed.