JOHN B. ENNIS V. FRANK TUCKER.

No. 15,384.  (96 Pac. 140.)

SYLLABUS BY THE COURT.

QUITCLAIM DEEDS—*Notice—Priority.*  An unrecorded quitclaim deed will be held to be inferior and subordinate to a subsequent quitclaim deed from the same grantor, where the holder of the later deed is a purchaser in good faith, for value, is ignorant of the former conveyance, and when the existence of the prior deed was so concealed that it could not be discovered by the exercise of reasonable diligence on the part of the subsequent grantee.

Error from Logan district court; JAMES H. REEDER, judge.  Opinion filed May 9, 1908.  Affirmed.

STATEMENT.

THIS is a suit to quiet title.  Frank Tucker was in possession of the real estate in controversy, claiming title thereto under a tax deed.  On September 1, 1903, he commenced this suit in the district court of Logan county, making W. W. Drury, the original owner of the land, defendant.

W. H. Wagner was the attorney for Tucker, and John B. Ennis represented the defendant.  While the suit was pending, and on April 30, 1904, Ennis purchased the interest of his client in the land, obtaining a quitclaim deed therefor, which he withheld from record.  Afterward Ennis entered upon negotiations, apparently in behalf of his client, to purchase the claim of Tucker, and to this end addressed a letter to W. H. Wagner, which reads:

"OAKLEY, KAN., August 1, 1904.

"*W. H. Wagner, Russell Springs:*

"DEAR SIR—Concerning the Tucker-Drury case I have not been able to get my client much in humor to pay anything 'for peace,' and have not been able to make any definite offer in the matter till now.  His claim is that your client has had more than the taxes by grazing over it for many years with his flocks, and this is a substantial claim in the law.  If it was worth

anything for that purpose, it was worth the amount of the yearly taxes. Again, your client's claim is barred by the statute, and my judgment is that in a trial you would never get the tax deed in evidence. I only suggest these things to show that your claim is a weak one so far as recovery is concerned. Well, I will do this with you: I will, in order to buy peace, and without prejudice to the rights of my client in any way in the suit, we will pay you $50 and the cost of the suit to be divided, and settle the suit and by proper journal entry dismissing your client's petition and quieting the title as to Tucker, in my client. I think this is a liberal offer, considering the equities in the case.

Yours truly,      JOHN B. ENNIS."

On January 26, 1905, Wagner, for his client, began negotiations with W. W. Drury for the purchase of his interest in the land, and addressed a letter to him which reads:

"*W. W. Drury, Bolivar:*

"DEAR SIR—What is the least you will take for deed to N. W. 1/4, 34, 12, 33, in this county, except taxes, cash net to you? Please let me hear from you by return mail."

On February 4, 1905, Wagner again wrote Drury, as follows:

RUSSELL SPRINGS, KAN., 2-4-'05.
"*W. W. Drury, Bolivar, Mo.:*

"DEAR SIR—The records here still show that you have an interest in the N. W. 1/4, 34, 12, 33, in this county, and I would like to get a quitclaim deed from you to this land, if you don't want too much for it. And I would like to know the very least you will take for the same, net cash to you? Please answer by return mail."

Drury answered the last letter as follows:

"LYNCH, NEB., 2-12, 1905.
"*W. H. Wagner, Esq., Russell Springs, Kan.:*

"DEAR SIR—Your second letter to hand, in regards to land in Logan county, Kansas, N. W. 1/4, 34-12-33. In regards will say if you like, you can write me and make your best offer for a quitclaim deed, and I will consider it. You can address me as you have and it will be forwarded to me.

Yours resp.,      W. W. DRURY, *Bolivar, Mo.*"

On February 16, 1905, Wagner sent a letter to Drury enclosing a quitclaim deed ready for execution, and therein offered to pay $40 for the conveyance, with a request that the deed be executed and returned to the county treasurer of Logan county, who would pay the amount offered. The deed was returned and the money paid according to this arrangement. On February 27, 1905, the deed was recorded. On March 3, 1905, Ennis wrote to Tucker as follows:

*"Mr. Frank Tucker, Burr Oak:*

"DEAR SIR—I have delayed in answering your letter of December 26 in regard to amount wanted by you for release of any claim you hold on the Drury quarter. Your claim is altogether too high for consideration, but we will do this and nothing further and without prejudice to our client's rights in the suit, and for the purpose of effecting a peaceful settlement of the matters in litigation. We will give you $100 in cash and take a decree in Drury's favor in the case, and D. to pay the court costs in the case. We feel that this is more than you will get in case of a trial, but be that as it may, this is the very best that we will do in the matter. After considering the matter, drop me a line as to your conclusion in the premises, and oblige,

JOHN B. ENNIS."

On April 8, 1905, Ennis again wrote to Tucker as follows:

*"Mr. Frank Tucker, Burr Oak:*

"DEAR SIR—I have yours of March the 13th and in reply will say there is $75 between us and we will split the amount and offer you $37.50 more, making the total offer $137.50 and we pay the costs in the action, and take a decree quieting the title in us. This is the very best we will do and the offer holds good until the 15th of this month, and if not accepted the offer is withdrawn. Court sets at the Springs on the 18th of this month, and I shall be absent from here after the 15th, and if you have a mind to take the amount offered, let me know before that time, without fail, as after that I would not get your letter in time.

Yours truly,          JOHN B. ENNIS."

Ennis recorded his deed April 21, 1905. Wagner

acted as agent and attorney for Tucker in procuring the deed from Drury. He had no notice or knowledge of the deed held by Ennis until after it was recorded. Ennis did not wish Wagner or Tucker to know of the conveyance by Drury to himself, as he thought a better settlement could be made if they were ignorant of it. For this reason the conversation and correspondence between Ennis and Wagner were such as to indicate that Drury was the owner of the land and was making a real contest as defendant in the suit. In this way Wagner was deceived and induced to purchase the conveyance from Drury. At the first term of the district court after this deed had been obtained Wagner gave notice that he had purchased the interest of Drury to the land and proposed to dismiss the case. To this Ennis objected and the suit was continued. Afterward Ennis substituted himself as defendant in place of Drury, and filed an answer and cross-petition alleging his ownership of the land and asking for a decree quieting his title thereto. Finally the case was tried and Tucker obtained a decree quieting his title to the premises in controversy. Under the former decisions of this court the tax deed held by Tucker is conceded to be void on its face.

John B. Ennis, pro se.

W. H. Wagner, Lee Monroe, and George A. Kline, for defendant in error.

The opinion of the court was delivered by

GRAVES, J.: The tax deed being void, the title of the parties to the land in controversy must depend upon their respective quitclaim deeds. Drury was the owner and conveyed the premises first to Ennis, and afterward to Wagner for Tucker. Upon this situation Ennis contends that Wagner, having taken a quitclaim deed, obtained thereby only such interest in the land as his grantor, Drury, held at the date of the conveyance, which was nothing, as the latter had previously

conveyed it to Ennis. On the other hand Wagner insists that the public records showed a clear title in Drury, and that he in good faith accepted the conveyance from Drury relying upon the record; that Ennis, by failing to have his deed recorded, lost the advantage of being a prior purchaser.

The rule concerning the rights of persons holding real estate under quitclaim deeds is not the same in all jurisdictions, but in this state it has been frequently considered and may be regarded as settled. Whoever takes a quitclaim deed is notified by the very limitations in the conveyance that the grantor does not undertake to convey a full title to the premises. This limitation is a sufficient suggestion that other interests may be outstanding to place the grantee upon inquiry as to what such possible interests may be. It may be stated, therefore, that as a general rule the holder of such a deed takes the land conveyed subject to all outstanding interests and equities shown by the records and such as are discoverable by the exercise of reasonable diligence. A quitclaim deed, however, will convey the present interest of the grantor in the premises as effectually as any other instrument. The chief distinguishing feature between this kind of a deed and other forms of conveyance is that it furnishes notice to the grantee of outstanding interests and equities additional to those of which constructive notice is imparted by the public record. If the grantor holds the full title to the premises, a quitclaim deed will convey the complete estate; if there are outstanding unrecorded interests or equities of any kind, the conveyance will be subject to such of these as a reasonably diligent search would discover. If there be outstanding unrecorded equities or interests, however, which are unknown to the purchaser, and which can not be ascertained by a reasonably diligent search, and the purchase is made in good faith and for value, then the conveyance will take precedence thereof. The degree of diligence necessary to give this preference will depend upon the cir-

cumstances of each particular case. It is vigorously contended by the plaintiff in error that the holder of a quitclaim deed takes subject to all outstanding equities, without restriction or limitation, but such is not the rule in this state. (*Lewis v. Kirk*, 28 Kan. 497, 42 Am. Rep. 173; *Lee v. Bermingham*, 30 Kan. 312, 1 Pac. 73; *Johnson v. Williams*, 37 Kan. 179, 14 Pac. 537, 1 Am. St. Rep. 243; *Merrill v. Hutchinson*, 45 Kan. 59, 25 Pac. 215, 23 Am. St. Rep. 713; *Fountain v. Kenney*, 71 Kan. 642, 81 Pac. 179; *Eger v. Brown*, 77 Kan. 510, 94 Pac. 803.)

Tested by the rule recognized here, we think the district court properly found that the quitclaim deed from Drury to Wagner conveyed the premises free from the claim of Ennis under the older, unrecorded deed. The situation of the parties and the circumstances of the transaction show that Wagner was deceived by both Drury and Ennis, and was thereby induced to make the purchase. This suit, which involved the title to the land in question, was pending; Wagner was the attorney for the plaintiff, Tucker; and Ennis was the attorney for Drury. So long as the suit was pending Wagner might, and naturally would, think that Ennis was in good faith representing the interest of his client, and that the client continued to be the owner of the land in litigation. Nothing has been shown which would justify the suspicion on the part of Wagner that the land had been sold by Drury to his attorney and that the litigation was being continued under its original style to accomplish the purposes of such attorney. The circumstances under which Ennis acquired his deed from Drury, and his subsequent conduct of the lawsuit, were well calculated to conceal his interest in the land, so that no reasonable amount of diligence upon the part of Wagner would have enabled him to discover it.

On the other hand, Ennis knew that Tucker desired to buy the interest of Drury, and might negotiate therefor with him directly, but with this knowledge the

fact that Drury had parted with his title was concealed from both Tucker and Wagner. Ennis not only failed to have his deed recorded, but paid the taxes on the land in the name of Drury, showing a purpose on his part to prevent Wagner from discovering the real situation. The fact that the tax appeared by the record to have been paid by Ennis disclosed nothing unusual to Wagner; it merely showed the payment of taxes by an attorney on the land of his client—a very common and proper proceeding. It contained no suggestion of ownership on the part of the attorney. On the contrary it indicated ownership in Drury, and was evidently intended to convey that impression.

The letters written by Ennis after Wagner had obtained the deed from Drury could not, it is insisted, have influenced Wagner in making the purchase. These letters were probably admitted for the purpose of showing why the deed from Drury to Ennis was not recorded, and the general purpose on the part of Ennis to keep that conveyance from the knowledge of Wagner.

It is also urged that the deed from Drury to Wagner is void because made in violation of sections 2091 and 2092 of the General Statutes of 1901, which make it a crime to convey real estate with intent to defraud prior purchasers or other persons, and also require persons who make conveyances to mention therein all prior instruments which may have been made relating to the same lands. We are unable, however, to see how these sections apply to this case, as there is no evidence of an intent to defraud on the part of either party. The only evidence upon this subject was that of Drury, who testified that he supposed when he made the second deed that the first one had been recorded and no one would be deceived or misled by the later one.

Complaint is made that Ennis took the deposition of Drury, whose testimony proved unsatisfactory and disappointing to such an extent that he declined to offer it in evidence, and the defendant in error was thereupon

permitted to do so, although Ennis objected. We are unable to find any objections in the abstract, and therefore we can not say such action of the court was erroneous.

It is further contended that Wagner was not a purchaser for value, having only paid $40 for the deed. We can not consent to this conclusion. We do not understand the rule to be that a purchaser for value must necessarily give an adequate price.

There are other questions discussed by the plaintiff in error, but in the view we have taken they are not material, and need not be considered. We find that the interest in the real estate held by Ennis under his quitclaim deed was a secret and concealed equity, of which Wagner had no notice or knowledge when he received the deed from Drury, and the existence of which could not, by the exercise of any reasonable degree of diligence, have been discovered by him; and that the latter was a purchaser in good faith and for value. We therefore conclude that the purchase by Ennis, though prior in time, is subsequent in right to that of Tucker.

The judgment of the district court is affirmed.