# H. W. LEWIS v. MARY E. KIRK.

28 497
40 167,
40 693

28 497
41 421

28 497
45 64

28 497
47 80

28 497
51 589

28 497
57 693

28 497
68 274

28 497
78 60

1. RELEASE OF MORTGAGE; *Bona Fide Purchaser.* Where real estate is mortgaged to secure the payment of a negotiable promissory note, a third person may purchase the real estate in good faith, although he may not see the note or mortgage, although he may not pay the full value of the land, and although the mortgagee may not receive the full amount of the face of the note, provided that both mortgagor and mortgagee consent to the transaction, and the mortgagee, prior to the completion of the transaction, regularly releases the mortgage, by an entry on the margin of the record of the mortgage in the office of the register of deeds.

2. NOTE AND MORTGAGE, *Negotiable Character of.* Where a real-estate mortgage is executed to secure the payment of a negotiable promissory note, such mortgage will so far partake of the negotiable character of the note that whenever the note is transferred by indorsement before due so as to free it from all equities existing in favor of the maker of the note, or of prior indorsers, the mortgage will also be freed from such equities; but until the mortgage is recorded, such transfer will not prevent a third person, who has no notice of the mortgage or transfer, from purchasing the mortgaged property, and thereby obtaining a full and absolute title to the property, free and clear from the mortgage lien. But when the mortgage is recorded, its negotiable character is then extended even to *bona fide* purchasers of the property, and it retains such character, contemporaneously with the note to which it is an incident, so long as the note remains unsatisfied and negotiable, or until the mortgage is released of record by the mortgagee, or his attorney, assignee, or personal representative; and when the mortgage is so released, it then loses its negotiable character to the extent that any third person who may then purchase the property in good faith, will obtain the full, complete and absolute title thereto, freed from all equities, liens, interests, trusts, or incumbrances existing in favor of any holder of the note and mortgage, whether the note is satisfied, or not.

*Error from Sedgwick District Court.*

ACTION brought by *Lewis* against *Kirk* and another, upon a note and mortgage. Trial at the May Term, 1881, of the district court, and judgment for defendant *Kirk* and against plaintiff *Lewis,* who brings the case here. The facts appear in the opinion.

32—28 KAS.

*E. Hill*, for plaintiff in error.

*Sluss & Hatton*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action on a promissory note and a mortgage. ·The note· was a negotiable instrument for $205, executed by Winfield S. Romaine to George R. Shaver; and the mortgage was a real-estate mortgage, ex-

Statement of facts.

ecuted by Romaine to Shaver, to secure the payment of the note, and was duly recorded.   Shaver transferred the note and mortgage, before due, to the Farmers' and Merchants' bank at Wichita, Kansas, as collateral security for the payment of another note, executed by Shaver to the bank.   This note and mortgage were transferred to the bank by an indorsement of the note, and by delivery of the note and mortgage.   No written assignment of the mortgage was ever made or recorded.   Afterward, but before the note was due, Mary E. Kirk purchased the mortgaged property from Romaine, paying therefor $477.26, as follows: $300 to discharge a prior mortgage; $80.65 to Shaver for releasing the mortgage executed to him; and $96.61 to Romaine and to other creditors of his.   Mrs. Kirk at the time had no knowledge that the note and mortgage which had been executed by Romaine to Shaver had been transferred to the Farmers' and Merchants' bank, and had no knowledge of the nature and character of such note and mortgage, except as the same were shown by the record of the mortgage in the recorder's office.   Afterward the bank transferred the note and mortgage to its president, H. W. Lewis, who then commenced this action to recover upon the same, making Romaine and.Mrs. Kirk parties defendant in the action.   The plaintiff, Lewis, properly set forth his cause of action in his petition, and the defendant, Mrs. Kirk, properly set forth her defense in her answer, and to this defense the plaintiff replied by filing a general denial.   A trial was had upon these pleadings, before the court without a jury, and the court found generally in

favor of the defendant, Mrs. Kirk, and against the plaintiff, and rendered judgment accordingly.  The plaintiff then moved for a new trial, which motion was overruled; and the plaintiff then brought the case to this court for review.

It will be seen that the controlling question in this case is solely with regard to the mortgaged property, and arises between Lewis, a *bona fide* holder of the note and mortgage, and Mrs. Kirk, a *bona fide* purchaser of the mortgaged property.

It is true, the plaintiff·claims that Mrs. Kirk was not a *bona fide* purchaser of the property; but as that question was and is one of fact, and as it was properly submitted to the court below upon the pleadings and the evidence, and as the court below found in her favor and against the plaintiff, and as there was sufficient evidence to sustain the finding of the court below, that question must now be considered as settled and at rest, and the defendant must now be deemed to have been a *bona fide* purchaser of the property.  It is true that Mrs. Kirk or her agent did not see the note and mortgage. Nor was it necessary.  She was not a party to either of them. She was not a payor or payee, an indorser or indorsee, a mortgagor or mortgagee, nor an assignor or assignee; and she had no right to the possession of either the note or the mortgage.  She was a mere purchaser of real estate, and interested only in making a sufficient examination to see that the title was clear, or appeared to be clear.  Her agent, however, inquired for the note and mortgage, and was told that they were at Shaver's home, about twenty-five miles distant. We are now discussing the question of fraud in fact, and these matters certainly do not prove any such kind of fraud.

It is also true that Mrs. Kirk did not pay to Shaver for releasing the mortgage the full amount of the note; but none of these things prove that she was not a *bona fide* purchaser of the property.  As before stated, she was not a party to either the note or the mortgage, and was not bound to know the exact nature of the transactions had between Shaver and Romaine, or all of such transactions.  She was not bound to

know that there was still more than $80.65 due on the note.
But even if she had known the same, still that fact alone
would not make any difference; for the holder of a note and
mortgage may release the mortgage without receiving the full
value of the note, or even without receiving anything thereon
or therefor.    He may take other security on the note, or he
may consider the maker of the note perfectly good, and be
willing to release the mortgage without receiving any pay-
ment on the note.    But what the character of the transactions
were between Shaver and Romaine, Mrs. Kirk was not bound
to know; and from anything appearing in the case, she may
have acted in the most perfect good faith.    It is true, also,
that the land was worth more than $477.26.    It was in fact
worth about $700; but that fact does not establish fraud, any
more than the other facts do; and the court below by its find-
ings necessarily found that Mrs. Kirk and her agent acted in
good faith in the purchase of the property.    Of course Shaver
acted in bad faith.    After transferring the note and mortgage
to the bank, he should not have entered a release of the mort-
gage upon the records of the county.    We now pass to the
questions of law.

The question now arises, who shall suffer from the fraud
of Shaver—the *bona fide* holder of the note and mortgage,
or the *bona fide* purchaser of the mortgaged property?

The plaintiff claims that it must be the purchaser of the
property; and he founds that claim exclusively upon the
negotiable character of the note and mortgage.    The defend-
ant, on the other hand, claims that it is the plaintiff who
must lose; and she founds her claim upon the laws regulating
the sale and conveyance of real estate, the registry laws, etc.,
and upon the claim that although the note is negotiable, the
mortgage is not.

Now it must be admitted that a mortgage in the abstract is
not, and never was, a negotiable instrument; and that even
where it is made for the purpose of securing some debt, or
instrument, or act, or transaction, not negotiable, it is not,
and never was, a negotiable instrument.

In this state, the only negotiable instruments are bills of exchange, promissory notes and bonds, payable to order or bearer; and if payable to order and transferred, then indorsed by the payee thereof.

But it is claimed by the plaintiff that when a mortgage is executed to secure the payment of a negotiable instrument, it so far partakes of the negotiable character of such instrument as to become itself negotiable; and in support of this proposition, the plaintiff cites: 1 Jones on Mortgages, § 834; *Carpenter v. Longan*, 83 U. S. (16 Wall.) 271, 275; *Sawyer v. Pritchett*, 86 U. S. (19 Wall.) 147; *Croft v. Bunster*, 9 Wis. 503, 510, 511; *Kelley v. Whitney*, 45 Wis. 110; *Vandercook v. Baker*, 48 Iowa, 199; *Beals v. Neddo*, 10 Cent. L. J. 187; same case, 1 McCrary, U. S. C. 206; *Burhans v. Hutcheson*, 25 Kas. 625.

To this extent we think the claim of the plaintiff is correct. A mortgage in this state is only a security — only an incident to the debt which it is made to secure, and, like all other securities, it follows the debt and partakes of its nature and character.

The defendant, however, disputes this doctrine, even to the extent above suggested, and cites many authorities which seem to sustain his view of the case, among which, one of the ablest and most thoroughly considered is the case of *Baily v. Smith*, 14 Ohio St. 396, 405, *et seq.*

Of course such a doctrine as the one we have just conceded to be correct confers a vast amount of intrinsic force upon a negotiable instrument. It says that a negotiable instrument, by its own intrinsic force, may confer the important element of negotiability upon a collateral contract — a mortgage of real estate — and make such collateral contract, like itself, negotiable. Suppose that the negotiable instrument should be executed by one person, and that the mortgage to secure the same should be executed by another and different person, and that the mortgaged property should belong to the mortgagor, and not to the person who executed the note: then is the mortgage, as against the mortgagor and his grantees, nego-

tiable to the extent of the note? And suppose, further, that a portion of the note should be paid before maturity, and then that the note and mortgage should be transferred by indorsement of the note before maturity: could the transferee, as the plaintiff claims, not only recover a judgment against the maker of the note for the full amount of the note, but also recover judgment against the mortgagor to sell the mortgagor's property to pay all of such amount? Or could the transferee, as the defendant claims, recover a judgment against the mortgagor to sell only a sufficient amount of his property to pay the amount actually due on the note? Could the two instruments under such circumstances be considered substantially as only one instrument, and each negotiable, or must they be considered as separate instruments — one negotiable and the other not? For the purposes of this case, we shall assume where the mortgage has been duly recorded, and not discharged of record, that both instruments would be negotiable, and that the mortgaged property would be liable in all these cases for the full amount of the main instrument (the note), notwithstanding any equities that might exist on the one side in favor of the mortgagor, or his grantee, or 'that might exist on the other side in favor of the maker of the main instrument, or any indorser thereof. Under the authorities, we would also think that whenever the payee and mortgagee of a negotiable promissory note, and its attendant mortgage, transfers such note and mortgage by indorsement of the note, he cannot then discharge the mortgage of record so as to affect existing rights. This would seem to be the doctrine enunciated in the following cases: *Roberts v. Halstead*, 9 Pa. St. 32; *Vandercook v. Baker*, 48 Iowa, 199. But none of the cases yet cited reach the present case. The authorities so far cited go only to the extent of saying that the transfer before due of a negotiable instrument, secured by a mortgage, cuts off all equities existing in favor of the maker of the note and mortgage, or in favor of any person who has put the same in circulation as maker or indorser, or who has notice, constructive or actual, of the existence of the mortgage,

and no sufficient and legal notice of its discharge or satisfaction; and they do not go to the extent of saying that no person can become an innocent and *bona fide* purchaser of the mortgaged property so as to obtain it freed from the mortgage debt, when the records of the county apparently show that the mortgage debt is no lien upon the property, or when they fail to show that it is such lien.

The plaintiff claims that the case of *Burhans v. Hutcheson*, 25 Kas. 625, is conclusive in his favor in the present case. We do not think so, however. In that case, the discharge of the mortgage of record was not made by the mortgagee, but was made by the mortgagor himself—that is, the mortgagor seemingly attempted to release himself from his own mortgage, a mortgage which he himself had executed; and to discharge himself from his own debt. The discharge in that case was void—the same as no discharge at all. In the present case, the contest is between a *bona fide* holder of the note and mortgage and a *bona fide* purchaser of the mortgaged property, who had no knowledge, actual or constructive, that any person except the mortgagee had any interest in the note and mortgage; and the release of the mortgage was made by the mortgagee himself. The release in this case was by the right person, and was valid. The two cases are so absolutely dissimilar that the one reported in 25 Kansas can be no authority for this.

The defendant's counsel cite the following authorities, in support of their views: *Bank v. Anderson*, 14 Iowa, 544; *Vanice v. Bergen*, 16 Iowa, 555; *McClure v. Burris*, id. 591; *Cornog v. Fuller*, 30 Iowa, 212; *Bowling v. Cook*, 39 Iowa, 200; *Walker v. Schreiber*, 47 Iowa, 529; *Ayers v. Hays*, 60 Ind. 452; *Etzler v. Evans*, 61 Ind. 56; *Fosdick v. Barr*, 3 Ohio St. 471; *Ex'rs of Swartz v. Leist*, 13 Ohio St. 419; *Baily v. Smith*, 14 Ohio St. 396; *Roberts v. Halstead*, 9 Pa. St. 32; *Henderson v. Pilgrim*, 22 Tex. 464; *Fassett v. Smith*, 23 N. Y. 252; *Van Keuren v. Corkins*, 66 N. Y. 77; *Johnson v. Carpenter*, 7 Minn. 176; *Ogle v. Turpin*, 13 Cent. L. J. 479;

same case, 101 Ill.; Jones on Mortgages, §§ 472, 791, 820, 967.

The theory upon which the defendant claims that her rights cannot be affected by reason of the negotiability of the note and mortgage in this case is, that she is not a party to either the note or mortgage; that she is not a maker or indorser, a payee or mortgagee, and has never had any connection therewith. She claims that she is merely a purchaser of the real estate, and that, as such purchaser, her rights are governed and to be determined, not by the laws or rules of courts concerning negotiable instruments, but by the laws regulating the sales and conveyances of real estate and by the registry laws. She claims that she has a right to purchase real estate as free and clear from incumbrances, when the records of the county show that the same is free and clear from incumbrances; provided, of course, that her purchase is in fact in good faith.

Section 19 of' the registry laws provides that—

"Every instrument in writing that conveys any real estate, or whereby any real estate may be *affected*, . . . . may be recorded in the office of the register of deeds of the county in which said real estate is situated."

Section 20 of such laws provides that the record of such instrument shall impart notice to others; and § 21 of such laws provides that—

"No such instrument in writing shall be valid, except between the parties thereto and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record." (Comp. Laws of 1879, p. 212.)

All persons admit that a mortgage of real estate, to be of any validity as against third persons without notice, must be recorded. (See act concerning conveyances and act concerning mortgages.) Sec. 3 of the act concerning mortgages recognizes ".the recording of the assignment of a mortgage." And § 5 of the same act provides that—

"Any mortgage of real property that has been or may hereafter be recorded, may be discharged by an entry on the

margin of the record thereof, signed by the mortgagee, or his attorney, assignee, or personal representative, acknowledging the satisfaction of the mortgage, in the presence of the register of deeds or his deputy, who shall subscribe the same as a witness." (Comp. Laws of 1879, pp. 555, 556.)

And § 5 of the act relating to frauds and perjuries provides that no interest in lands exceeding one year in duration shall be assigned or granted, unless it be by some deed or note in writing, signed by the party assigning or granting the same. (Comp. Laws of 1879, p. 464.)

These are all the statutes that are necessary to be referred to respecting the sale and conveyance of real estate, or respecting instruments creating or discharging or affecting mortgage liens, or respecting the registry of instruments affecting real estate. There are other statutes governing judgment liens, attachment liens, mechanics' liens, etc. Under these statutes we think it is perfectly safe for any person who has no notice of outstanding equities to purchase real estate which the records of the county apparently show is free and clear from all incumbrances. If a mortgage has been executed by the owner of the property to secure the payment of a negotiable promissory note, and the mortgage has never been recorded, then we think a person who has no knowledge of the mortgage may purchase the property from the mortgagor freed from all liens or equities created by the mortgage. Or, if the mortgage has been recorded and then has been regularly released on the margin of the record thereof by the mortgagee, then we think that any person, if he does it in good faith, may purchase the property in like manner freed from all liens and equities existing in favor of the holder of the mortgage; or in other words, and to state the proposition more succinctly, a purchaser in good faith of real estate may always rely upon the public records, subject only to the equities of persons in open, visible and exclusive possession of the property. A purchaser in good faith of real estate is never bound to take notice of secret equities, liens, interests, trusts or in-

1. Release of mortgage; bona fide purchaser.

cumbrances, which cannot be discovered from an inspection of the public records, or cannot be ascertained by inquiries from the parties in possession. He may always rely upon the public records and such inquiries as they suggest, and such inquiries as are proper of the parties in possession; and if from all these the title appears to be clear, he will then obtain a good title, although there may be some outstanding equity or lien in favor of some other person.

After a careful consideration of the authorities and the statutes of this state, we have come to this conclusion: Where a real-estate mortgage is executed to secure the payment of a negotiable promissory note, such mortgage will so far partake of the negotiable character of the note that whenever the note is transferred by indorsement before due so as to free it from all equities existing in favor of the maker of the note, or prior indorsers, the mortgage will also be freed from such equities. But until the mortgage is recorded, such transfer will not prevent a third person, who has no notice of the mortgage or transfer, from purchasing the mortgaged property and thereby obtaining a full and absolute title to the property, free and clear from the mortgage lien. But when the mortgage is recorded, its negotiable character is then extended even to *bona fide* purchasers of the property, and it retains such character contemporaneously with the existence of the note to which it is an incident until the note is satisfied, or until the mortgage is released of record by the mortgagee, or his attorney, assignee, or personal representative; and that when the mortgage is so released it then loses its negotiable character to the extent that any third person who may then purchase the property in good faith will obtain the full, complete and absolute title thereto, freed from all equities, liens, interests, trusts or incumbrances existing in favor of any holder of the note and mortgage, whether the note is satisfied or not.

*2. Note and mortgage, negotiable character of.*

The judgment of the court below will be affirmed.

All the Justices concurring.