## SHAWNEE STATE BANK v. HOGE et al.

No. 17610.    Opinion Filed May 15, 1928.

(Syllabus.)

1. **Mortgages—Necessity for Assignment of Mortgage to Be Recorded as Against Subsequent Bona Fide Purchaser of Property—Assignee not Protected Against Fraudulent Release by Mortgagee.**

Under sections 5251 and 5252, C. O. S. 1921, an assignment of a real estate mortgage must be recorded in order to charge subsequent purchasers or incumbrancers of the property with constructive notice thereof, and unless so recorded, the holder thereof will not be protected against a fraudulent release of said mortgage, duly executed and placed of record by the mortgagee and relied upon by a bona fide purchaser of the property covered by said mortgage.

2. **Same—Finding that Defendants Were Bona Fide Purchasers Sustained.**

Record herein examined, and held, to support the findings of the trial court that the defendants herein were bona fide purchasers of the property here in question.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by the Shawnee State Bank of Topeka, Kan., against A. G. Hoge, Lela Hoge, and others. Judgment for defendants named, and plaintiff appeals. Affirmed.

Snyder, Owen & Lybrand, for plaintiff in error.

Henry L. Goddard, for defendants in error.

HUNT, J. This is an appeal from the district court of Oklahoma county. The parties to this appeal appear here as in the court below, and will be so referred to herein.

Plaintiff, Shawnee State Bank of Topeka, Kan., held five notes, aggregating the principal sum of $4,500, which had been executed and delivered by A. R. Whiting and Fred D. Whiting to Minnie D. Hannah and by said Minnie D. Hannah transferred and delivered to said bank as collateral security to loan of Howard Hannah with said bank in the sum of $7,500. Said notes were dated April 9, 1923, and due, the first note in the sum of $1,000, on September 15, 1923, and the last note in the sum of $500, on June 15, 1925, and were secured by a second mortgage on certain real estate in the city of Oklahoma City. Said notes were acquired by the bank on June 23, 1923, but no written assignment of the mortgage was taken. This action was instituted on May 5, 1924, to recover judgment on the notes and foreclosure of mortgage, two of said notes being delinquent at that time, and plaintiff elected to declare all of said notes due. The Whitings, as makers, and the Hannahs, as indorsers, were made defendants, together with A. G. Hoge and his wife, Lela Hoge, and it was alleged that the transfer of the notes carried with it the security and amounted to an equitable assignment of the mortgage to plaintiff. It was further alleged that the Hoges claimed some interest in the real estate which was junior and inferior to the lien of the mortgage securing the notes held by plaintiff.

Defendants Hoge filed answer to petition of plaintiff in the form of a general denial, and also filed cross-petition alleging that they were the owners of the property covered by the mortgage, having purchased same in good faith from the record owners thereof, for a valuable consideration, relying on the record title showing a release of the mortgage securing the notes held by plaintiff, which had been duly executed by the mortgagee and filed for record, and that they had no knowledge of the fact that said notes were held by plaintiff bank or that it had or claimed any interest therein, and that they were therefore bona fide purchasers for value, without notice of the alleged equitable assignment of said mortgage as claimed by plaintiff, and further alleged that said pretended equitable assignment described in plaintiff's petition was a cloud upon their title and asked that same be can-

celed and removed. A jury was waived and the case proceeded to trial upon the issues thus joined between the plaintiff and defendants A. G. Hoge and Lela Hoge, and the court, after making findings of fact and conclusions of law, rendered judgment thereon in favor of these defendants and against the plaintiff, from which judgment plaintiff prosecutes this appeal.

Plaintiff in its brief presents the errors complained of under one single assignment, to wit: That the court erred in not rendering judgment for plaintiff under the testimony and under his special findings of fact. It is not argued that the findings of fact are not supported by the testimony, and same are set out herein in full.

"On April 9, 1923, Mrs. Minnie D. Hannah was the owner of the real estate described in the petition, and on that day she and her husband, Howard Hannah, conveyed it by warranty deed to A. R. Whiting.

"April 19, 1923, Anna R. Whiting and her husband, Fred D. Whiting, mortgaged this real estate to Gum Brothers to secure an indebtedness of $5,000.

"April 19, 1923, A. R. Whiting and her husband, Fred D. Whiting, executed a second mortgage to Minnie D. Hannah to secure the payment of five notes, four for $1,000 each and the other for $500. This mortgage was filed for record on April 28, 1923.

"June 3. 1923, Minnie Hannah and her husband, Howard Hannah, indorsed and delivered these second mortgage notes to the plaintiff here, Shawnee State Bank, as collateral security for a loan of $7,500 to Howard Hannah.

"December 24. 1923, Fred D. Whiting and his wife, Anna R. Whiting, by warranty deed conveyed this real estate to Howard Hannah subject to the mortgage of $5,000 to Gum Brothers and the second mortgage to Howard Hannah for $4,500 heretofore mentioned, which deed contained this recital: 'All of which the second party assumes and agrees to pay; and said second party being now the owner and holder of said second mortgage notes, hereby releases the said Anna R. Whiting and F. D. Whiting from all personal liability upon said second mortgage notes.' This deed was filed for record on January 3, 1924.

"January 7, 1924, Minnie D. Hannah executed and acknowledged release of the said $4,500 mortgage, which release was filed for record on January 10, 1924, at 8 o'clock a. m., and recited that it was executed in consideration of the payment of the debt named in said mortgage.

"January 8, 1924, Howard Hannah and Minnie D. Hannah, husband and wife, by warranty deed conveyed this real estate to A. G. Hoge, said deed reciting that said premises were free, clear and discharged from all liens and incumbrances of whatsoever nature, 'except first mortgage of $5,000 and 1923 general taxes, all of which second party assumes and agrees to pay.' This deed was delivered to Mr. Hoge on January 10, 1924, between 9 and 10 o'clock a. m. with an abstract of title thereto showing an, acknowledged release of the $4,500 mortgage given to Minnie D. Hannah, which release was dated January 7, 1924, signed and acknowledged by Minnie D. Hannah and filed for record in the office of the register of deeds at 8 o'clock a. m. on January 10, 1924, and recorded in release record No. 61, page 583. Accompanying the delivery of this deed to Mr. Hoge was a written opinion dated January 8, 1924, of a member of the bar of this county reciting that he had examined said abstract and found that said property was subject to the mortgage of $4,500 shown thereon, but that he understood that mortgage was to be released when settlement was made.

"Final settlement was made with Mr. and Mrs. Hannah by Mr. Hoge only after the agent of Mr. Hannah had exhibited to Mr. Hoge said abstract brought down to January 10, 1924, at 8 o'clock a. m., showing that a release of said second mortgage for $4,500 had been filed for record. Mr. Hoge assumed payment of the $5,000 mortgage and paid $2,500 in cash in addition thereto with no knowledge of the transfer and indorsement of the second mortgage notes by the Hannahs to the plaintiff."

"Conclusion of Law.

"The defendants Hoge and Hoge are the owners and innocent purchasers of the real estate mentioned in these findings and are in possession thereof, and are entitled to judgment quieting the title thereto as against the claim of the plaintiff herein, and judgment should be rendered accordingly."

Were the defendants A. G. Hoge and Lela Hoge innocent purchasers of said real estate, as found by the trial court? The answer to this question determines this case. The undisputed facts show that the mortgage securing the notes in question was never assigned in writing to the plaintiff, and therefore no assignment ever appeared of record, but it is contended by plaintiff that the transfer of the notes carried with it the security and constituted an equitable assignment of the mortgage securing said notes and plaintiff was entitled to sue thereon and to foreclosure of said mortgage. This is a principle of law, as applied to the original parties to the transaction, or to third parties having notice. about which there can be no

dispute, same being well settled by numerous authorities of this and other courts of last resort. Is it applicable here and binding upon the defendants Hoge under the admitted facts? Sections 5251 and 5252, C. O. S. 1921, provide:

"Except as hereinafter provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage, or contract relating to real estate as between the parties thereto; but no deed, mortgage, contract, bond, lease or any other instrument relating to real estate other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided.

"Every conveyance of real property acknowledged or approved. certified and recorded as prescribed by law from the time it is filed with the register of deeds for record ·is constructive notice of the contents thereof to subsequent purchasers, mortgagees, incumbrancers or creditors."

In Chase v. Commerce Trust Co., 101 Okla. 182, 224 Pac. 148, this court held:

"Sections 5251 and 5252, Comp. Stat. 1921, are sufficiently comprehensive to include assignments of real estate mortgages, and such assignments must be recorded to charge subsequent purchasers or incumbrancers with constructive notice thereof.

"The recording of an assignment of a mortgage covering real estate is necessary in order to protect the assignee thereof against a subsequent fraudulent discharge of record by the mortgagee, should the property thereafter pass into the hands of a bona fide purchaser relying upon such recorded discharge."

It is admitted that the assignment of the mortgage relied upon by plaintiff herein was not recorded, and the recording act of this state not only permitting but requiring recording of assignments of mortgages in order to charge subsequent purchasers or incumbrancers with constructive notice thereof. it was necessary, in our judgment, for plaintiff to place its assignment on record if it desired to protect itself against the fraudulent release of the mortgage by the original mortgagee.

Plaintiff contends this section deals entirely with those cases where there exists a formal instrument in writing conveying a mortgage, and is therefore not applicable here, and further suggests that the banking institutions of our state encounter thousands of instances where they take equitable assignments of real estate mortgages and they have nothing they can put on record. This

may be true, but we know of no rule of law or business requiring them to do so. Speaking both from observation and experience, we are inclined to the view that banks in this state seldom, if ever, rely upon a so-called equitable assignment of real estate mortgage, but at the time of acquiring the notes or other indebtedness secured by mortgage, usually obtain and place of record a written assignment of the mortgage. We would not place any undue burden on the banks, or in any way hinder them in their philanthropic and altruistic endeavors, but, on the other hand, would throw around them all the safeguards the law allows. However, it is equally important that purchasers in good faith of real estate may always rely upon the public records, subject only, of course, to the equities of persons in open and visible possession of property.

It would have been very easy, under the admitted facts herein, for plaintiff, at the time it procured the notes, to have, at the same time, procured from the mortgagee a written assignment of the mortgage and recorded same in Oklahoma county, and thus this entire controversy could have been avoided. This, of course, was not necessary as between the original parties, but absolutely essential under the facts and law here, wherein the rights of a third party are involved.

No contention is made that defendants had actual notice of plaintiff's claim, but plaintiff contends that the fact that this mortgage was referred to in the deed wherein the Whitings conveyed this property to Howard Hannah was sufficient to place the defendant Hoge on inquiry, and that he knew or could have known by the exercise of reasonable diligence that these notes were outstanding and before accepting as final or conclusive a release from the mortgagee he should have required that the notes themselves be produced.

From our examination of the authorities cited, we cannot agree that any such duty rested on the defendants herein. A number of Kansas cases are cited by defendants, among them, Lewis v. Kirk, 28 Kan. 497, and we quote therefrom and adopt as applicable herein the language of Judge Valentine, as follows:

"After a careful consideration of the authorities and statutes of this state, we have come to this conclusion: Where a real estate mortgage is executed to secure the payment of a negotiable promissory note, such mortgage will so far partake of the negotiable character of the note that, when-

ever the note is transferred by indorsement before due, so as to free it from all equities existing in favor of the maker of the note, or prior indorsers, the mortgage will also be freed from such equities. But until the mortgage is recorded, such transfer will not prevent a third person, who has no notice of the mortgage or transfer, from purchasing the mortgaged property, and thereby obtaining a full and absolute title to the property, free and clear from the mortgage lien. But when the mortgage is recorded its negotiable character is then extended even to bona fide purchasers of the property, and it retains such character contemporaneously with the existence of the note to which it is an incident until the note is satisfied, or until the mortgage is released of record by the mortgagee, or his attorney, assignee or personal representative; and that when the mortgage is so released, it then loses its negotiable character to the extent that any third person who may then purchase the property in good faith will obtain the full, complete and absolute title thereto, freed from all equities, liens, interests, trusts, or incumbrances existing in favor of any holder of the note and mortgage, whether the note is satisfied or not."

Plaintiff cites and relies on Bamsberger v. Geiser, 33 Pac. 609, an Oregon case, and, after quoting from same at length, admits that it turns on the construction of the recording act of that state. The court there held that in the absence of a specific direction in the statute upon the subject, there was no duty resting on the assignee of a mortgage to record his assignment in order to protect himself as against subsequent purchasers or incumbrancers. In view of our statute, sections 5251 and 5252, supra, and the construction placed thereon by this court in Chase v. Commerce Trust Co., supra, this case is not controlling nor even persuasive here.

Plaintiff also cites and relies on Jilson v. Dickinson-Reed-Randerson Co., handed down on April 27, 1926, appearing in 38 Okla. App. Ct. Rep., page 348. This opinion, however, was withdrawn, and this case as it now appears in 125 Okla. 276, 257 Pac. 759, has no application to the question here involved.

The only other cases referred to in plaintiff's brief are those cited and relied upon by defendants which plaintiff undertakes to distinguish from the case at bar by contending that defendant Hoge purchased the property at the time he entered into the contract to purchase same in January, which was long prior to the time the release was placed of record. We must confess we are unable to follow plaintiff's reasoning in this regard.

The contract of purchase was entered into in January, subject to approval of title, and purchase was not consummated until this release was obtained and placed of record, and we therefore hold, under the undisputed facts herein, that this property was not in fact purchased until after this release was placed of record, and this case comes squarely within the rule announced in Lewis v. Kirk, supra, and other Kansas cases cited, to wit, Fisher v. Cowles (Kan.) 21 Pac, 229, and White v. Kimberling (Kan.) 216 Pac. 1087. We think a fair deduction from the record would be that defendant Hoge would never have consummated the deal or become the purchaser of this property had not this release been obtained and placed of record.

Be that as it may, it certainly cannot be said that he purchased it before the release was placed of record, for the court specifically found that at the time he accepted the deed and paid for the property he was furnished an abstract showing the release of this mortgage duly executed by the mortgagee and recorded. So, to use the exact language of the court in Chase v. Commerce Trust Co., supra, same being quoted and relied on by plaintiff herein, the release by the original mortgagee was "found of record" by the subsequent purchaser and relied upon by him when he purchased the property, though not of record at the time he entered into negotiations for its purchase.

While it is true defendant Hoge admitted that he had bought and sold several pieces of real estate and was in no sense a novice in transactions involving the purchase of real property, it also appears he required an abstract of title to this property which he had examined by his counsel, and upon this $4,500 mortgage being called to his attention he required a release of same from the mortgagee, who appeared from the abstract to be the record owner thereof, and this notwithstanding the fact that the deed from the Whitings to Howard Hannah contained a provision purporting to release and cancel said indebtedness. This deed also referred to Howard Hannah as the owner of said second mortgage, this being one of the circumstances relied upon by plaintiff to place defendant Hoge upon inquiry. If Howard Hannah had been the owner and holder of said second mortgage notes, this recital in the deed would certainly have been a valid release as between him and the Whitings, but the mortgage standing on the record in the name of Minnie D. Hannah, the defendant Hoge very properly demanded that a written release of same be

procured from her and placed of record before he would consummate the purchase. All of the parties to the original transaction having acknowledged in writing full and complete satisfaction of the indebtedness, and the mortgage securing same being released of record by the only persons shown by the record to have any right to release it, of whom could the defendants make further inquiry in the absence of any information of any claims of third parties, which it is not contended they had? It appears from the record herein that a fraud was perpetrated both on the bank and the Whitings by the Hannahs, but defendants Hoge were not in any way a party to it, and same was made possible by the failure of the bank to procure and place of record an assignment of the mortgage at the time they procured the notes.

Plaintiff says in its brief:

"The consequence was that Hoge was bound to ascertain whether or not the Hannahs still owned said notes and said mortgage, the means for which were readily in his hands, to wit, the simple device of demanding to see the canceled notes, and this, especially, in view of the fact that three of these notes, aggregating $3,500, were by the very terms of the Whiting mortgage, shown to be not yet due."

This is merely a statement of counsel and no authorities or statute of this state is cited in support thereof.

Let us suppose that the defendant Hoge had demanded of the Hannahs to see the canceled notes; they could very easily have answered, and probably would in view of their other conduct herein, that same had been destroyed or had been canceled and delivered back to Whiting, the original makers, and the only persons primarily liable thereon, at the time the property was deeded back to Hannah, and had been by them destroyed, as is frequently done when fully paid; or they could have pretended to account for the notes in various ways without disclosing same had in fact been transferred to plaintiff, and defendants, in the absence of any information to the contrary, would have been justified in relying on these statements, false though they might be.

In our judgment, the only theory upon which plaintiff could recover against the defendants Hoge would be that they were not bona fide purchasers of the property, and in view of the record facts as disclosed by the evidence herein the burden would be upon the plaintiff to show such a state of facts as to put the defendants upon inquiry, and they have wholly failed in that regard. The circumstances connected with the transaction relied on by plaintiff to charge defendant with notice, to wit, the reference to the mortgage in the deed from Whiting to Hannah, the fact that defendant purchased the equity for $2,500, when same was mortgaged for $4,500, and the fact that the agreement to purchase the property was made before any release of the mortgage was placed on record, and the further fact, as shown by the testimony, that the sellers were in a hurry to get their money, are all, in our judgment, wholly insufficient to impute any bad faith to the defendants, or to even place them on inquiry. It appears from the record that defendants did not even know the Hannahs and dealt with them entirely through their agent. The notes in question were not signed by the defendants. They did not have any interest in same, and the mortgage securing same being released on record by the mortgagee was sufficient to justify defendants in accepting this title after procuring abstract of same, and having abstract duly examined by their counsel. To charge Hoge with constructive notice of the fact that the notes had not been paid, under the facts herein, would be inconsistent with the purpose of the recording laws of this state, with settled principles of equity, and with the convenient transactions of business. Williams v. Jackson, 107 U. S. 478.

It therefore follows that the judgment of the district court of Oklahoma county was and is in all things correct, and same is hereby affirmed.

All the Justices concur.

Note.—See under (1) 41 C. J. p. 700, § 721; 19 R. C. L. pp. 360-366; 5 R C. L. Supp. p. 1033. (2) 42 C. J. p. 118, § 1679.