## PATTERSON v. RALPH et al.

No. 26832.   May 25, 1937.

Chas. R. Freeman and M. E. Munson, for plaintiff in error.

R. O. Ingle, for defendants in error.

WELCH, J. This is an appeal from the district court of Sequoyah county. The parties appear here as they appeared in the trial court and will be referred to as plaintiff and defendant.

Plaintiff sought to foreclose a real estate mortgage on land belonging to the defendant. The facts are as follows:

In 1919 one Porter, being then the owner of the land involved, executed a $6,000 note and mortgage to Graves Farm Loan Investment Company. At the same time he executed a second note and mortgage to the same company. A short time after the execution of these notes and mortgages the first mortgage was sold and assigned to the plaintiff, Patterson. A written assignment of the mortgage was also executed and delivered to the plaintiff, which assignment was not placed of record until a few weeks before the commencement of this foreclosure action. The Graves Company foreclosed its second mortgage in 1926, and became the owner of the land by purchase at sheriff's sale. In 1927 the defendant, Ralph, obtained a tax deed to the land involved, and in the same year brought suit to quiet title to the land. The Graves Company was made party defendant in such suit, but the plaintiff here, Patterson, was not made party to that suit. Ralph had no knowledge that the first mortgage had been assigned to Patterson. A decree quieting Ralph's title to the land was entered on January 5, 1932, which decree became final, and Ralph took possession of the land. The foreclosure petition was filed in this cause on November 27, 1934. The trial court held that the former judgment quieting title was res adjudicata, and effectively divested plaintiff here of all right, title, interest, and claim in the land, and that ruling is here challenged.

In First National Bank of Ada v. Stephenson, 119 Okla. 46, 247 P. 993, this court held in the second paragraph of the syllabus as follows:

"A judgment quieting plaintiff's title to certain land, in a suit to which all the persons known to the plaintiff as claiming an interest in or incumbrance on the property are made parties, is effectual to di-

vest the interest not legally recorded of a person who is not a party but who claims under a defendant in the suit, and of which the plaintiff had no actual or constructive notice."

The plaintiff appears to recognize that the Stephenson Case is in point as supporting the defendant's position, but asserts that such case should be overruled. He points out that this court has held that the assignment of the note carries with it the mortgage without regard to whether the assignment of the mortgage is placed, of record, and cites Foster v. Augustanna College & Theological Seminary of Rock Island, Ill., 92 Okla. 96, 218 P. 335; Unger v. Shull, 154 Okla. 277, 7 P. (2d) 881; Prudential Life Insurance Co. v. Ward, 135 Okla. 117, 274 P. 648; Chase v. Commerce Trust Co., 101 Okla. 182, 224 P. 148, and others. It is his contention that the law of negotiable instruments governs the instant case, and he seeks to show that the principles of the Negotiable Instruments Law were overlooked in the Stephenson Case, supra.

We have examined the cited cases, as well as a number of other decisions of this court dealing more or less with the principles of the Negotiable Instruments Law contended for by the plaintiff, and with the statutes relating to the recording of instruments affecting real estate. See Oklahoma State Bank of Wapanucka v. Burnett, 65 Okla. 74, 162 P. 1124, and Lunn v. Kellison, 66 Okla. 168, 153 P. 1136, to the effect that recording is unnecessary as to subsequent liens of judgment creditors; and Shawnee State Bank v. Hoge, 131 Okla. 9, 267 P. 481, and Stroheker v. Torrence, 134 Okla. 167, 272 P. 432, as to necessity of recording assignments of mortgages to protect against fraudulent release.

We do not observe any conflict of legal principles between the Stephenson Case and the other opinions of this court which we have examined, nor do we feel that the Stephenson Case is subject to the criticism made by plaintiff. It is true that the assignment of a negotiable instrument carries with it the mortgage securing same, and is effective as to all parties with notice, but the fact that the Negotiable Instruments Law applies in such manner will not prohibit the application also of the recording statutes if the facts bring the case within the provisions of such statutes. In the Chase Case, supra, the Commerce Trust Company, as agent of the landowner, paid the amount of the mortgage to Aurelius-Swanson Company, the original mortgagor. The landowner knew the mortgage had been assigned and did not belong to Aurelius-Swanson Company, and the court therefore concluded that the Commerce Trust Company had actual notice. The opinion holds that an assignment of mortgage is an instrument included within the provisions of our recording statutes, as do others of the above cited cases.

Generally, the cases seem to hold that in the case of payment of a note the party paying the same may demand the note itself and thus protect himself from unrecorded assignments, and it is generally contended that the parties are not dealing with the land itself, but are dealing with negotiable instruments, and, therefore, the Negotiable Instruments Law applies and there is no field for the operation of the recording statutes. On the other hand, where the acts of the parties relate to the land itself, as in the Stephenson, Hoge and Torrence Cases, supra, and in the instant case, the recording statutes become operative and important.

We adhere to the rule of the Stephenson Case, supra, and conclude that the same is controlling of the question just discussed.

Plaintiff next contends that the district court of Sequoyah county was without jurisdiction to enter its decree quieting title because of bankruptcy of Graves Farm Loan Investment Company.

Ralph instituted his suit to quiet title in 1927. On January 7, 1930, a trustee in bankruptcy was appointed for the Graves Company. The decree quieting title was entered in 1932. Plaintiff asserts that the adjudication of bankruptcy of the Graves Company and the appointment of a trustee over its property ousted all state courts of jurisdiction over the property unless such state courts had prior to bankruptcy appointed a receiver and taken charge of the property in question. He asserts that it is the rule that the court first obtaining possession of the res continues with its administration to the exclusion of all other courts. At the time of the adjudication in bankruptcy the Graves Company, as a defendant in the suit to quiet title, had already filed its answer. The bankruptcy proceedings were not called to the court's attention. It is the contention of of the plaintiff that the decree quieting

title in Ralph is void for the reason that the bankrupt court had possession of the premises by trustee, and no authority was ever given by it to serve the trustee, nor was there any order permitting the trustee to disclaim any interest in the premises. In this connection he cites Isaacs v. Hobbs Tie & Timber Co., 228 U. S. 734, 75 L. Ed. 645, Stratton v. New, 283 U. S. 318, 75 L. Ed. 1060, and Gross v. Irving Trust Co., 289 U. S. 342, 77 L. Ed. 1243.

We feel that an examination of the cited cases will disclose their inapplicability to the facts in the instant case, and will disprove the cases as authority for the plaintiff's contention here.

We consider the case of Eyster v. Gaff, 91 U. S. 521, as stating the principles of law applicable to the present case. Therein the United States Supreme Court held that when a suit is properly pending in the state court at the time of the adjudication in bankruptcy, the state court is not thereby ousted of jurisdiction and that the possession taken of the property by the trustee in bankruptcy is a possession pendente lite. We quote therefrom as follows:

"At the time that suit was commenced, the mortgagor, McClure, was vested with the title, and was the proper and necessary defendant. Whether any other persons were proper defendants does not appear, nor is it material to inquire. But for the bankruptcy of McClure, there can be no doubt that the sale under the foreclosure-decree and the deed of the master would have vested the title in the purchaser, and that this would have related back to the date of the mortgage. Nor can there be any question that, the suit having been commenced against McClure when the title or equity of redemption (no difference which it is) was in him, any person who bought of him, or took his title or any interest he had pending the suit, would have been bound by the proceedings, and their rights foreclosed by the decree and sale. These are elementary principles. Is there any thing in the Bankrupt Law, or in the nature of proceedings in bankruptcy, which takes the interest in the mortgaged property acquired by the assignee out of this rule?

"There is certainly no express provision to that effect. It is maintained by counsel that, because the assignee is vested by the assignment under the statute with the legal title, there remains nothing from that time for the decree of foreclosure to operate on, and it cannot thereafter have the effect of transferring the title which is in a party not before the court. But, if this be true in this case, it must be equally true in other suits in which the title is transferred pendente lite.

"We have already said, and no authority is necessary to sustain the proposition, that a sale and conveyance by the mortgagor pending the suit would not prevent the court from proceeding with the case without the purchaser, nor affect the title of him who bought under the decree. So, in a suit against the vendor of real estate for specific performance, his conveyance of the legal title after suit was brought would not suspend the proceedings or defeat the title under the decree of the court. The obvious reason for this is that if, when the jurisdiction of the court has once attached, it could be ousted by the transfer of the defendant's interest, there would be no end to the litigation, and justice would be defeated by the number of these transfers. Another reason is that, when such a suit is ended by a final decree transferring the title, that title relates back to the date of the instrument on which the suit is based, or to the commencement of the suit; and the court will not permit its judgment or decree to be rendered nugatory by intermediate conveyances.

"We see no reason why the same principle should not apply to the transfer made by a bankruptcy proceeding. The Bankrupt Act expressly provides that the assignee may prosecute or defend all suits in which the bankrupt was a party at the time he was adjudged a bankrupt. If there was any reason for interposing, the assignee could have had himself substituted for the bankrupt, or made a defendant on petition. If he chose to let the suit proceed without such defense, he stands as any other person would on whom the title had fallen since the suit was commenced.

"It is a mistake to suppose that the Bankrupt Law avoids of its own force all judicial proceedings in the state or other courts the instant one of the parties is adjudged a bankrupt. There is nothing in the act which sanctions such a proposition.

"The court in the case before us had acquired jurisdiction of the parties and of the subject-matter of the suit. It was competent to administer full justice, and was proceeding, according to the law which governed such a suit, to do so. It could not take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of parties to the suit already pending.

"It was the duty of that court to proceed to a decree as between the parties before it, until by some proper pleadings

in the case it was informed of the changed relations of any of those parties to the subject-matter of the suit. Having such jurisdiction, and performing its duty as the case stood in that court, we are at a loss to see how its decree can be treated as void. It is almost certain, that if at any stage of the proceedings, before sale or final confirmation, the assignee had intervened, he would have been heard to assert any right he had, or set up any defense to the suit. The mere filing in the court of a certificate of his appointment as assignee, with no plea or motion to be made a party or to take part in the case, deserved no attention, and received none. In the absence of any appearance by the assignee, the validity of the decree can only be impeached on the principle that the adjudication of bankruptcy divested the other court of all jurisdiction whatever in the foreclosure suit. The opinion seems to have been quite prevalent in many quarters at one time, that the moment a man is declared bankrupt, the district court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the circuit courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person, who contested with the assignee any matter growing out of disputed rights of property or of contracts, into the bankrupt court by the service of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against this view.

"The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary."

For other cases involving related legal principles, see Tube City M. & M. Co. v. Otterson (Ariz.) 146 P. 203, and Murphy v. Brown (Ariz.) 100 P. 801.

The following statement of the law is to be found in 6 Amer. Jur. Bankruptcy, sec. 31, in part as follows:

"Bankruptcy proceedings do not, merely by virtue of their maintenance, terminate an action already pending in a state court, to which the bankrupt is a party, or deprive the court of jurisdiction in such case, especially where jurisdiction of both the subject-matter and the parties has been acquired by the state court before the filing of the petition in bankruptcy."

It is true that the Gaff, Otterson, and Brown Cases just cited were suits to foreclose liens upon the property. In view, however, of the reasoning employed by the United States Supreme Court in the Gaff Case we take it that the same legal principles are equally applicable where the state court has assumed jurisdiction in causes relating to the title to the specific property itself. No authorities are cited to justify us in reaching a different conclusion.

Plaintiff also contends here that the tax deed under which Ralph claims was void. In view of our conclusion that the district court had jurisdiction to render the decree quieting title in Ralph, and that such judgment is res judicata as to the plaintiff Patterson, it is of no importance to our determination of t h e present issues whether or not the tax deed was void. In Lind v. Goble, 117 Okla. 195, 246 P. 472, it is held in paragraph 2 of the syllabus:

"Where the holder of a resale tax deed recovers judgment on the merits in an action of ejectment against the record owner of the land who is also in possession and such judgment becomes final, in a subsequent action of ejectment by the holder of a deed to the same land which was unrecorded when the prior action was commenced and when judgment was rendered, brought against the plaintiff in the prior action, said second action being based upon the invalidity of the resale tax deed adjudicated in the first action, the judgment establishing the validity of the resale tax deed, even though erroneous as a matter of law, and even though the resale tax deed be absolutely void, is res adjudicata and operates as an estoppel against the assertion of any rights under the unrecorded deed."

Plaintiff further asserts that Ralph, as the holder of the tax deed, is not an innocent purchaser for value, nor a holder in due course, that there was no equity in his favor and that his rights are purely statutory. In view of our conclusion that the Stephenson Case, supra, is controlling, we consider it unnecessary to discuss such contention. The defendant here is entitled to prevail by virtue of the former decree in his favor quieting his title.

The judgment is affirmed.

OSBORN, C. J., and PHELPS, CORN, and GIBSON, JJ., concur.